15-CV- 7089 (KBF)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANDY FARIS, AISHA OGLIVIE, and SAMUEL MITCHELL,

                              Plaintiffs,

-against-

THE CITY OF NEW YORK, RUBEN SERRANO, OSVALDO HERNANDEZ, WENDY FLORES, JOHN FERRARA,

                              Defendants.

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO ENFORCE THE SETTLEMENT AGREEMENT BETWEEN THE PARTIES

***ZACHARY W. CARTER***
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Lucienne Pierre*
*Tel:  (212) 356-2415*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT ................................................................................................... 1

STATEMENT OF FACTS ............................................................................................................ 1

STANDARD OF REVIEW ........................................................................................................... 5

ARGUMENT

    POINT I

        PLAINTIFF ANDY FARIS DID NOT EXPRESSLY RESERVE THE RIGHT TO NOT BE BOUND UNTIL THE PARTIES SIGNED A FORMAL WRITTEN DOCUMENT MEMORIALIZING THEIR SETTLEMENT AGREEMENT ....................................................................................... 7

    POINT II

        ACTIONS (OR THE LACK THEREOF) TAKEN AFTER NOVEMBER 9, 2016 SUGGEST THAT ALL PARTIES RELIED UPON AN UNDERSTANDING THAT THE MATTER WAS SETTLED ................................................................................................. 8

    POINT III

        THERE WERE NO MATERIAL TERMS LEFT TO NEGOTIATE AFTER THE NOVEMBER 9, 2016 EMAIL AGREEMENT TO SETTLE ............................................. 8

    POINT IV

        THE PARTIES' AGREEMENT IN PRINCIPLE WAS THE USUAL FORM OF SETTLEMENT ....................................... 9

CONCLUSION ............................................................................................................................ 11

## TABLE OF AUTHORITIES

**Cases**                                                                                                              **Pages**

Arcadian Phosphates, Inc. v. Arcadian Corp.,
   884 F.2d 69 (2d Cir. 1989)..................................................................................................6

Estate of Brannon v. City of N.Y.,
   No. 14-CV-2849 (AJN)(SN),
   2015 U.S. Dist. LEXIS 145473 (S.D.N.Y. Oct. 19, 2015) ......................................................5, 7

Ciaramella v. Reader's Digest Ass'n, Inc.,
   131 F.3d 320 (2d Cir. 1997)..................................................................................................6

Janneh v. GAF Corp.,
   887 F.2d 432 (2d Cir. 1989)..................................................................................................5

Media Group, Inc. v. HSN Direct Int'l, Ltd.,
   202 F.R.D. 110 (S.D.N.Y. 2001) ........................................................................................10

Meetings & Expositions, Inc. v. Tandy Corp.,
   490 F.2d 714 (2d Cir. 1974)..................................................................................................5

Omega Eng'g, Inc. v. Omega, S.A.,
   432 F.3d 437 (2d Cir. 2005)..................................................................................................5

Walker v. City of New York,
   2006 U.S. Dist. LEXIS 34345 (E.D.N.Y. Apr. 4, 2006) ........................................................9

Wesley v. Correction Officer Badge # 9417,
   05 CV 5912 (HB), 2008 U.S. Dist. LEXIS 2 (S.D.N.Y. Jan. 2, 2008)..................................10

Winston v. Mediafare Entm't Corp.,
   777 F.2d 78 (2d Cir. 1986)..........................................................................................6, 7, 10

**Statutes**

Fed. R. Civ. Pro. 41(b) and 37 ...............................................................................................2

Local Civil Rule 83.10............................................................................................................1

**PRELIMINARY STATEMENT**

Defendants City of New York, Police Officer Ruben Serrano, Police Officer Osvaldo Hernandez, Police Officer Wendy Flores and Sgt. John Ferrara submit this memorandum of law in support of their motion to enforce the settlement agreement entered into by the parties on November 9, 2016. The facts of this case, the history of the parties' settlement negotiations, and the applicable law all clearly demonstrate that defendants are entitled to enforcement of the parties' November 9, 2016 settlement agreement. Any attempt by any party to unilaterally add material terms of the parties' settlement after an agreement in principle has been reached is without merit, and should be flatly rejected by his Court pursuant to well-settled contract law. For the reasons set forth in this memorandum, defendants respectfully request that the Court grant their motion to enforce the November 9, 2016 settlement agreement.

**STATEMENT OF FACTS**

On September 9, 2015, plaintiff Andy Faris commenced this action by filing a complaint alleging constitutional violations stemming from his July 18, 2014 arrest. See Docket No. 1. That same day, the matter was assigned to participate in the Southern District of New York's Local Civil Rule 83.10 Plan ("1983 Plan"). (See Docket No. 4.) On January 14, 2016, plaintiff filed a First Amended Complaint, followed by a Second Amended Complaint on April 13, 2016 which named two additional plaintiffs: Aisha Oglivie and Samuel Mitchell. (See Docket Nos. 12 and 38.)

The matter did not settle during the time period prescribed for mediation. (See Docket No. 34.) The Court held an initial conference and set a discovery schedule wherein fact discovery ended on November 4, 2016. (See Docket No. 43.) On September 13, 2016, plaintiff Andy Faris was deposed. (See Andy Faris Deposition Transcript dated September 13, 2016 ("Andy Faris Transcript"), annexed to the December 16, 2016 Declaration of Lucienne Pierre

(Pierre Decl.) as Ex. A). During his deposition, Mr. Faris testified that he had not been arrested during the year 2016. (See Andy Faris Transcript at p. 110:10-11.) On October 28, 2016, plaintiff Aisha Oglivie was terminated from this action pursuant to Rules 41(b) and 37 of the Federal Rules of Civil Procedure. (See Docket No. 72.) Discovery ended on November 4, 2016. (See Docket No. 43.)

Before November 9, 2016, the parties actively negotiated settlement before reaching agreement. (See Settlement Negotiation Emails Between Counsel, annexed to the Pierre Decl. as Ex. K.) On November 7, 2016, defense counsel tendered an offer to settle plaintiff Andy Faris' claims for $6,000 and to settle plaintiff Samuel Mitchell's claims for $8,000, contingent upon both plaintiffs settling their claims. (See November 7, 2016 Email Offer from Defense Counsel to Plaintiffs' Counsel, annexed to the Pierre Decl. as Exhibit B.)

On November 9, 2016, plaintiffs' counsel informed defense counsel of the following: "I spoke to my clients. We have a settlement for 6k and 8k for Andy and Samuel respectively. Please send the paperwork." (See November 9, 2016 Email Acceptance from Plaintiffs' Counsel to Defense Counsel, annexed to the Pierre Decl. as Exhibit C.) On November 11, 2016 defense counsel confirmed with plaintiffs' counsel that the parties had a settlement. (See November 11, 2016 Email from Defense Counsel to Plaintiffs' Counsel, annexed to the Pierre Decl. as Exhibit D.) On November 16, 2016, defense counsel informed the Court that the parties had reached a settlement in principle. (See Docket No. 78.) That same day, defense counsel sent settlement paperwork to plaintiffs' counsel for execution. (See November 16, 2016 Email from Defense Counsel to Plaintiffs' Counsel, annexed to the Pierre Decl. as Exhibit E.)

On Monday, November 28, 2016 at 11:58 a.m., plaintiffs' counsel emailed defense counsel the stipulation of dismissal portions of the settlement paperwork, stating "Here

you go.  I should have the plaintiffs' general releases and affidavits later this week." (See November 28, 2016 11:58 a.m. Email from Plaintiffs' Counsel to Defense Counsel, annexed to the Pierre Decl. as Exhibit F.) That same day, defense counsel informed plaintiffs' counsel that the stipulations would only be filed once <u>all</u> of the settlement paperwork had been executed, including the general releases and affidavits.  (See November 28, 2016 12:02 p.m. Email from Defense Counsel to Plaintiffs' Counsel, annexed tot eh Pierre Decl. as Exhibit G.)

On Wednesday, November 30, 2016, plaintiffs' counsel emailed defense counsel an attachment entitled "Releases," stating nothing in the body of his email except "FYI."  (See November 30, 2016 Email from Plaintiffs' Counsel to Defense Counsel, annexed to the Pierre Decl. as Exhibit H.) Defense counsel reviewed the attached releases and found that plaintiff Andy Faris had unilaterally inserted a carve-out for a February 2016 incident into the General Release included in his settlement paperwork.  (See id.)

Defense counsel promptly informed plaintiffs' counsel that plaintiff Andy Faris' attempt to unilaterally insert a carve-out into his settlement agreement was unacceptable.  (See November 30, 2016 11:24 a.m. Email from Defense Counsel to Plaintiffs' Counsel, annexed to the Pierre Decl. as Exhibit I, at p. 2.) Defense counsel made clear to plaintiffs' counsel the various reasons that Mr. Faris' carve-out was unacceptable: (1) during settlement negotiations, the parties had not discussed or agreed to a carve-out; (2) plaintiffs' counsel was well aware that any settlement agreement between the parties would require execution of a General Release; and (3) Mr. Faris had testified during his September 2016 deposition that he had not been arrested at all in 2016.  (See generally Emails from Defense Counsel to Plaintiffs' Counsel, annexed to the Pierre Decl. as Exhibit I, at pp. 1-2.)

3

Defense counsel further informed plaintiffs' counsel that the fact that he sent the settlement papers with the unilateral addition of a carve-out without any mention of it in his transmittal email was concerning, as it appeared that he may have sent the papers for processing with the intention that the additional term, which was never agreed to, would go unnoticed. (See November 30, 2016 1:17 pm Email from Defense Counsel to Plaintiffs' Counsel, annexed to the Pierre Decl. as Exhibit I.) Indeed, it appeared that plaintiffs' counsel had sent the stipulations of settlement and the releases separately on Monday November 28 and Wednesday November 30, hoping that defense counsel would file the stipulations with the Court on Monday, and be stuck with the addition of the unilateral carve-out term when the releases were received on Wednesday. (See November 28, 2016 12:02 p.m. Email from Defense Counsel to Plaintiffs' Counsel, annexed to the Pierre Decl. as Exhibit G; November 30, 2016 Email from Plaintiffs' Counsel to Defense Counsel, annexed to the Pierre Decl. as Exhibit H.)

Plaintiffs' counsel's response was that Mr. Faris was insistent on a carve-out, was "adamant" about a carve-out, that he was not sure what to say, since he knew that the City strictly enforces General Releases. (See generally Emails from Plaintiffs' Counsel to Defense Counsel, annexed to the Pierre Decl. as Exhibit I, at pp. 1-2.) Incredibly, plaintiffs' counsel's response revealed that it was not until AFTER he had accepted the settlement offer on behalf of his clients that he informed them that they would be required to sign a General Release – a fact that he himself understood all along. (See id.)

Plaintiffs' counsel further informed defense counsel that without acceptance of the carve-out provision, the parties would need to write the Court to have the case re-opened. (See November 30, 2016 1:22 p.m. Email from Plaintiffs' Counsel to Defense Counsel, annexed to the Pierre Decl. as Exhibit I.) On Saturday, December 10, 2016, plaintiffs' counsel informed

4

defense counsel that his clients expected their settlement checks within 90 days of submitting their settlement paperwork, and that if defendants were unhappy with Mr. Faris' "notation on his release," they should write the Court to re-open the case. (See Saturday, December 10, 2016 Email from Plaintiffs' Counsel to Defense Counsel, annexed to the Pierre Decl. as Exhibit J.) In that same email, plaintiffs' counsel threatened to commence a new action to enforce settlement – supposedly the never-agreed upon settlement with a carve-out – stating that if he had to do so, he would seek costs and fees. (See id.)

## STANDARD OF REVIEW

A district court has the power to enforce summarily, on motion, a settlement agreement reached in a case that was pending before it. (See Meetings & Expositions, Inc. v. Tandy Corp., 490 F.2d 714, 717 (2d Cir. 1974)). A settlement agreement is a contract that is interpreted according to general principles of contract law. Omega Eng'g, Inc. v. Omega, S.A., 432 F.3d 437, 443 (2d Cir. 2005). Once a contract is entered into, it is binding and conclusive. Janneh v. GAF Corp., 887 F.2d 432, 436 (2d Cir. 1989). Once a court finds that parties reached a settlement agreement, the prevailing view is that such agreement is binding on all parties, "even if a party has a change of heart between the time of the agreement . . . and the time it is reduced to writing." Estate of Brannon v. City of N.Y., No. 14-CV-2849 (AJN)(SN), 2015 U.S. Dist. LEXIS 145473, at *8-9 (S.D.N.Y. Oct. 19, 2015) (citations omitted).

A presumption in favor of enforcement reflects the value that courts place on negotiated settlement agreements. Id. at *9 (citation omitted). It is also consistent with basic contract principles, which maintain that reformation of a settlement agreement is an extraordinary remedy. Id. (citations omitted). Mutual assent of the parties to the terms of a settlement is the essential component of a settlement agreement. Id. at 9-10. While a written

5

document is the most traditional evidence of mutual assent, parties may enter and be bound by an agreement without signing a fully executed contract. Id. (citing Winston v. Mediafare Entm't Corp., 777 F.2d 78 (2d Cir. 1986)). "Preliminary agreements" that address all negotiated terms are enforceable even if they were written in an email or if they contemplate a subsequent memorialization in an executed document. See id., at *10 (citations omitted). Where there is no final document on which to rely, the controlling factor in determining whether parties are bound by an agreement is whether a court has evidence of the parties' intent to be bound. Id., at *10-11.

The Court of Appeals for the Second Circuit has adopted a four-factor test to evaluate disputes around parties' settlement intentions in the absence of a formalized writing. See Winston, 777 F.2d at 80.  Courts consider whether: (1) there has been an express reservation of the right not to be bound in the absence of a writing; (2) there has been partial performance of the contract; (3) all of the terms of the alleged contract have been agreed upon; and (4) the agreement at issue is the type of contract that is usually committed to writing." Id.  The factors "may be shown by oral testimony or by correspondence or other preliminary or partially complete writings." Id. at 81 (internal quotation omitted). No single factor is dispositive. Ciaramella v. Reader's Digest Ass'n, Inc., 131 F.3d 320, 323 (2d Cir. 1997).  However, "[t]he first factor, the language of agreement, is the most important." See Arcadian Phosphates, Inc. v. Arcadian Corp., 884 F.2d 69, 72 (2d Cir. 1989).

## ARGUMENT

### POINT I

**PLAINTIFF ANDY FARIS DID NOT EXPRESSLY RESERVE THE RIGHT TO NOT BE BOUND UNTIL THE PARTIES SIGNED A FORMAL WRITTEN DOCUMENT MEMORIALIZING THEIR SETTLEMENT AGREEMENT**

The first Winston factor in deciding a dispute over settlement is whether any party ever made an express reservation of the right not to be bound in the absence of a writing. Here, this factor weighs heavily in favor of enforcement of the November 9, 2016 settlement agreement – without a carve-out, since that was never an agreed-upon term. Plaintiff Andy Faris never made an express reservation of the right to not be bound until the parties signed a formal written document memorializing their settlement agreement. Indeed, though formal settlement paperwork was not executed in furtherance of the settlement until after November 9, 2016, the fact that the settlement in principle was reached via email is an argument in favor of its binding strength, since it is well-settled law that the fact that an agreement to settle occurs via email does not weaken the enforceability of the agreement. See Estate of Brannon v. City of N.Y at *14-15 (citation omitted). Defendants' intention to memorialize the email agreement in a formal writing after November 9, 2016 does not vitiate the binding power of the November 9, 2016 agreement reached via email. See id. Accordingly, the first Winston factor weighs strongly in favor of settlement.

7

## POINT II

**ACTIONS (OR THE LACK THEREOF) TAKEN AFTER NOVEMBER 9, 2016 SUGGEST THAT ALL PARTIES RELIED UPON AN UNDERSTANDING THAT THE MATTER WAS SETTLED**

Actions (or the lack thereof) taken after November 9, 2016 suggest that all parties understood that the matter was settled.  On November 16, 2016, defense counsel informed the Court that the parties had reached an agreement in principle.  See Docket No. 78.  On November 18, 2016, defendants refrained from filing a motion for summary judgment upon the understanding that the parties had reached an agreement in principle.  See Docket No. 43 (pursuant to the Court's May 5, 2016 Scheduling Order, any motion for summary judgment was to be filed by November 18, 2016). Settlement papers were drafted and sent to plaintiffs for execution.  (See November 16, 2016 Email from Defense Counsel to Plaintiffs' Counsel Attaching Settlement Paperwork, Pierre Decl. Exhibit E.) Indeed, before plaintiff Andy Faris' unilateral attempt to insert a carve-out into the General Release associated with his settlement, counsel for both parties operated with the understanding that the case was settled.  The actions of counsel for both parties, and lack thereof, as in the case of refraining from filing a motion for summary judgment, demonstrated that they had begun to partially perform the actions necessary to effectuate the November 9, 2016 settlement agreement.

## POINT III

**THERE WERE NO MATERIAL TERMS LEFT TO NEGOTIATE AFTER THE NOVEMBER 9, 2016 EMAIL AGREEMENT TO SETTLE**

Because the City uses a common waiver for all settlements, the only material issues in the parties' settlement negotiations were the amount to be paid to each plaintiff ($6,000

for plaintiff Andy Faris and $8,000 for plaintiff Samuel Mitchell) and the claims which were to be resolved (all).  Email correspondence exchanged by counsel addressed both of these issues. Plaintiffs' counsel understood that plaintiffs would be required to sign General Releases as part of their settlement agreements. (See November 28, 2016 11:58 Email from Plaintiffs' Counsel to Defense Counsel, November 28, 2012 12:02 p.m. Email from Defense Counsel to Plaintiffs' Counsel, and November 30, 2016 Email Exchanges Between Counsel, annexed to the Pierre Decl. respectively as Exhibits F, G, and I.) This fact was underscored by the fact that defendants' counsel informed plaintiffs' counsel that no stipulations of settlement would be filed with the Court until all settlement paperwork had been executed, including the General Releases for each plaintiff.  (See November 28, 2012 12:02 p.m. Email from Defense Counsel to Plaintiffs' Counsel annexed to the Pierre Decl. as Exhibit G.)  Thus, as of November 9, 2016, there were no material terms left to be negotiated with respect to the parties' settlement, and only the formal paperwork needed to be executed and filed.

## POINT IV

### THE PARTIES' AGREEMENT IN PRINCIPLE WAS THE USUAL FORM OF SETTLEMENT

The fourth Winston factor considers "whether the agreement at issue is the type of contract that is usually committed to writing." This factor weighs in favor of enforcement, because the agreement at issue does not approach the length or complexity of those frequently considered to require a writing.  See Walker v. City of New York, 2006 U.S. Dist. LEXIS 34345 (E.D.N.Y. Apr. 4, 2006) ("The settlement agreement in this case was for one lump-sum of $7,500.00. There was nothing complex about this agreement. Plaintiff has failed to provide any evidence that this facially straight-forward lump-sum settlement had any underlying complexity."). Even if the Court were to find that a settlement agreement of this nature is

9

normally not binding until execution of formal settlement paperwork, the fact that settlement negotiations took place almost exclusively via email – *i.e.*, in writing – weighs heavily in favor of enforceability of the parties November 9, 2016 email written agreement. An email agreement in principle is an acceptable and usual form of settlement for a lawsuit as simple and straightforward as this one.

Balancing Winston's four factors makes it clear that the parties' November 9, 2016 settlement agreement, which did not include a carve-out, is binding and enforceable.  The Winston test is meant, in part, to prevent parties from settling and unsettling litigation to suit their own immediate purposes.  See Wesley v. Correction Officer Badge # 9417, 05 CV 5912 (HB), 2008 U.S. Dist. LEXIS 2, *7 (S.D.N.Y. Jan. 2, 2008) (quoting Media Group, Inc. v. HSN Direct Int'l, Ltd., 202 F.R.D. 110, 112 (S.D.N.Y. 2001) (other citation omitted)).  Simply put, plaintiff Andy Faris cannot, in any way, dispute the validity or legal sufficiency of the parties' November 9, 2016 agreement to settle this case.  Therefore, plaintiff Andy Faris' attempt to unilaterally add a material term – such as a carve-out – after November 9, 2016 as a condition of settlement is improper.  For this reason, defendants respectfully request that the Court issue an order enforcing the parties' November 9, 2016 settlement agreement.

**CONCLUSION**

For the foregoing reasons, defendants respectfully request that the Court issue an order granting their motion to enforce the November 9, 2016 settlement agreement between the parties, without a carve-out, together with such other and further relief as this Court may deem just and proper.

Dated: New York, New York
December 15, 2016

> ZACHARY W. CARTER
> Corporation Counsel of the City of New York
> *Attorney for Defendants City of New York, Police Officer Ruben Serrano, Sgt. John Ferrara, Police Officer Osvaldo Hernandez, and Police Officer Wendy Flores*
>
> By: _/s/_
> Lucienne Pierre
> *Assistant Corporation Counsel*

cc: Vik Pawar, Esq. (via ECF)